No. 22-3462

**In the United States Court of Appeals
For the Eighth Circuit**

United States of America,
Appellee,

vs.

Carney Turner,
Appellant.

An Appeal from the United States District Court
For the District of Nebraska
The Honorable Robert F. Rossiter, Jr., Chief Judge
United States District Court

**Brief of Appellant**

**Carney Turner, Appellant,**

**Richard H. McWilliams
Assistant Federal Public Defender
District of Nebraska**
222 South 15th Street
Suite 300 North
Omaha, NE.  68102
Telephone Number (402) 221-7896

**Summary and Request for Oral Argument**

Carney Turner pled guilty to a six-count superseding indictment without a plea agreement. As it turns out, by combining elements from two distinct offenses into a single allegation, four of the six counts failed to state an offense. At sentencing, the district court applied three inapplicable large-scale sentencing guideline enhancements – for the commission of sex act or sexual contact (two levels), an aggravated role (four levels), and a pattern of prohibited sexual contact (five levels) – and then imposed a procedurally erroneous and substantively unreasonable life sentence.

Oral argument will assist the court in fleshing out these complex statute- and guideline-intensive issues. Given the breadth of this appeal and the severity of the sentence, Appellant Carney Turner requests fifteen minutes of argument per side.

# Table of Contents

Summary and Request for Oral Argument ............................i

Table of Contents ....................................................ii

Table of Authorities ...........................................iv-vi

Jurisdictional Statement ........................................1

Statement of the Issues...........................................2

Statement of the Case............................................3

Summary of the Argument .....................................7

Argument....................................................................8

I. Appellant Carney Turner pled guilty to four counts that
failed to state an offense. ........................................8

II. The district court incorrectly calculated Turner's
sentencing guideline range.................................................15

III. The district court's rare discretionary life sentence in a
guilty-plea case was procedurally erroneous and
substantively unreasonable.................................................21

Conclusion ..............................................................29

Certificate of Service............................................31

Certificate of Compliance.......................................................33

# Table of Authorities

## Cases

*United States v. Carter,* 960 F.3d 1007 (8th Cir. 2020) ...................... 2, 17

*United States v. Feemster*, 572 F.3d 455 (8th Cir. 2009) ......................... 2

*United States v. Lewis,* 2021 WL 2809819 (D. D.C. July 6, 2021) ... 10, 11

*United States v. Mata-Peres,* 478 F.3d 875 (8th Cir. 2007) ............... 2, 16

*United States v. Mung*, 989 F.3d 639 (8th Cir. 2021) ......................... 2, 11

*United States v. Paul*, 885 F.3d 1099 (8th Cir. 2018) ......................... 2, 11

*United States v. Pleasant*, 125 F.Supp.2d 173 (E.D. Va. 2000) ........ 14, 15

*United States v. Scott*, 732 F.3d 910 (8th Cir. 2013) ......................... 2, 26

*United States v. St. Claire*, 831 F.3d 1039 (8th Cir. 2016) ...................... 2

*United States v. Villareal*, 707 F.3d 942 (8th Cir. 2013) ..................... 2, 8

## Other Authorities

U.S. Sentencing Commission, *2020 Annual Report and 2020 Sourcebook*

    *of Federal Sentencing Statistics* ...................................................... 19, 23

U.S. Sentencing Commission, *Life Sentences in the Federal System,*

    (July 2020) ............................................................................................ 24

## Statutes

18 U.S.C. § 1591 ................................................................................. 9, 19

18 U.S.C. § 1591(a) ........................................1, 3, 9, 10, 11, 12, 13, 14, 19

18 U.S.C. § 1591(a)(1) ...................................................... 9, 10, 11, 13, 14

18 U.S.C. § 1591(a)(2) ...................................................... 9, 10, 11, 13, 14

18 U.S.C. § 1591(b)(2) ...................................................................... 17

18 U.S.C. § 1591(c) ......................................................... 9, 11, 12, 13, 14

18 U.S.C. § 1594(a) ................................................................................ 3

18 U.S.C. § 1594(c) ........................................................................... 1, 3

18 U.S.C. § 2422(a) ................................................................................ 1

18 U.S.C. § 2422(b) ........................................................................... 3, 19

18 U.S.C. § 2423(b) .............................................................................. 17

18 U.S.C. § 2426(b)(1)(A) .................................................................... 19

18 U.S.C. § 2426(b)(1)(B) .................................................................... 19

18 U.S.C. § 3553(a) .............................................. 6, 7, 22, 27, 28, 29

18 U.S.C. § 924 (c) ......................................................................... 14, 15

28 U.S.C. § 1291 .................................................................................... 1

**Sentencing Guidelines**

U.S.S.G. § 2G1.3 .................................................... 2, 20, 24, 28, 29



U.S.S.G. § 2G1.3(a)(3) ........................................................................ 16

U.S.S.G § 2G1.3(a)(4) ...................................................................16

U.S.S.G. § 2G1.3(b)(4) ...........................................................5, 16, 17

U.S.S.G. § 2G1.3(b)(4)(A) .....................................................5, 16, 17

U.S.S.G § 2G1.3(b)(4)(B) ..........................................................16, 17

U.S.S.G. § 3B1.1 .........................................................................2, 18

U.S.S.G. § 3B1.1(a) .....................................................................5, 18

U.S.S.G § 3B1.1(b) ...........................................................................18

U.S.S.G. § 3D1.4.............................................................................20

U.S.S.G. § 4B1.5 ................................................................2, 5, 6, 19

# Jurisdictional Statement

Carney Turner appeals his conviction of Counts I-IV of the superseding indictment. He also appeals the sentences imposed by the Honorable Robert F. Rossiter, Jr., Chief United States District Judge for the District of Nebraska, on Counts I-VI of the superseding indictment. The case number below is 8:21CR78-1.

Subject-matter jurisdiction over this case is proper pursuant to 18 U.S.C. §§ 1591(a), 1594(c), and 2422(a), the offenses of conviction. The United States Court of Appeals for the Eighth Circuit has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, which provides for jurisdiction over a final order subject to appeal.

The district court entered Turner's judgment on November 14, 2022. Turner filed a timely notice of appeal on November 22, 2022.

## Statement of the Issues

I.    Whether Appellant Carney Turner pled guilty to four counts that failed to state an offense.

> *United States v. Villareal*, 707 F.3d 942 (8th Cir. 2013)
> *United States v. Mung*, 989 F.3d 639 (8th Cir. 2021)
> *United States v. Paul*, 885 F.3d 1099 (8th Cir. 2018)

II.    Whether the district court incorrectly calculated Appellant Carney Turner's sentencing guideline range.

> *United States v. Carter,* 960 F.3d 1007 (8th Cir. 2020)
> *United States v. Mata-Peres,* 478 F.3d 875 (8th Cir. 2007)
> U.S.S.G. § 2G1.3
> U.S.S.G. § 3B1.1
> U.S.S.G. § 4B1.5

III.    Whether the district court's rare discretionary life sentence in a guilty-plea case was procedurally erroneous or substantively unreasonable.

> *United States v. Feemster*, 572 F.3d 455 (8th Cir. 2009)
> *United States v. St. Claire*, 831 F.3d 1039 (8th Cir. 2016)
> *United States v. Scott*, 732 F.3d 910 (8th Cir. 2013)

## Statement of the Case

On February 22, 2021, Carney Turner was arrested on a complaint alleging violations of 18 U.S.C. §§ 1594(a) (sex trafficking of a minor), 1594(c) (sex trafficking of a minor), and 2422(b) (coercion and enticement of a minor). R. Doc. 1. On March 18, 2021, a grand jury returned a five-count indictment that accused Mr. Turner of three counts of violating 18 U.S.C. § 1591(a) (sex trafficking of a minor) and two counts of violating 18 U.S.C. § 2422(b). R.Doc. 22. The indictment also included a forfeiture allegation. *Id.*

On May 20, 2021, the grand jury returned a superseding indictment, adding a pair of co-defendants, Sidney Marker and Julisha Biggs, and a conspiracy count under 18 U.S.C. § 1594(c). Specifically, Count I of the superseding indictment – the new count – alleged that Carney Turner and co-defendants conspired to:

> knowingly recruit, entice, harbor, transport, provide, obtain and maintain three minor females…and did benefit financially and by receiving anything of value from participation in a venture engaged in such acts, and having had a reasonable opportunity to observe [the minor females], and knowing and in reckless disregard that [the minor females] were each under the age of 18 years old and knowing and in reckless disregard that [the minor females] would be caused to engage in a commercial sex act in violation of Title 18, United States Code § 1591(a).

R.Doc. 41 at 1-2. Counts II, III, and IV each alleged that Carney

Turner, at various times:

> did knowingly recruit, entice, harbor, transport, provide, obtain and maintain [a minor female], and did benefit financially and by receiving anything of value from participation in a venture engaged in such acts, and having had a reasonable opportunity to observe [the minor female] and knowing and in reckless disregard that [the minor female] was under the age of 18 years old and knowing and in reckless disregard that [the minor female] would be caused to engage in a commercial sex act.

R. Doc. 41 at 3-4.

On May 25, 2022, Appellant Carney Turner pled guilty without a

plea agreement to all six counts of the superseding indictment. *See*

Transcript of Carney Turner's plea hearing, R. Doc. 232 (hereinafter

"TR2.")[1]

---

[1] In 8:21CR78, there are two transcripts unique to Carney Turner (his May 25, 2022 plea, R. Doc. 232, and his November 8, 2022 sentencing, R. Doc. 282) and two transcripts unique to co-defendant Sidney Marker (her July 18, 2022 plea, R. Doc. 231, and her November 8 and 14, 2022 sentencing, R. Doc. 283). A fifth transcript, R. Doc. 229, relates to a May 17, 2022 hearing on a joint (Turner *and* Marker) motion to continue. Though these five transcripts do not appear on the docket chronologically, this brief will refer to them thusly, earliest to latest:
> TR1: May 17, 2022 hearing on motion to continue, R. Doc. 229;
> TR2: May 25, 2022 Turner plea, R. Doc. 232;
> TR3: July 18, 2022 Marker plea, R. Doc. 231;
> TR4: November 8, 2022 Turner sentencing, R. Doc. 282; and
> TR5: November 8 and 14, 2022 Marker sentencing, R. Doc. 283.

The revised presentence investigation report (RPSR) included two-level enhancements for commission of a sex act or sexual contact under U.S.S.G. § 2G1.3(b)(4)(A) and four-level enhancements for an aggravated role under U.S.S.G. § 3B1.1(a).[2] Upon government suggestion, it also included a five-level enhancement for pattern of prohibited sexual conduct under U.S.S.G. § 4B1.5.

Before sentencing, Mr. Turner submitted his formal objections to these enhancements. R.Doc. 215 (SEALED) at 27-28 (sex act/sexual conduct), 29-31 (role), & 39-41 (pattern). At sentencing, Turner renewed these objections. TR4 at 34-38 (sex act/sexual conduct); 68-74 (role); and 74-77 (pattern).

The district court concluded that the two-level sex-act/sexual conduct and four-level role enhancements were warranted. TR4 at 38 & 74. The court also concluded that, though "it does seem in some respects to be overkill," the five-level pattern enhancement was properly applied as well. TR4 at 77.

---

[2] This brief uses "enhancement*s*," plural, because the § 2G1.3(b)(4)(A) enhancement and the § 3B1.1(a) role enhancement were applied for each of three victim groups.

The district court concluded that the adjusted offense level for each victim group was 44. TR4 at 77-78. With the multiple-count adjustment (adding three levels), the § 4B1.5 pattern enhancement (adding five levels), and the reduction for acceptance of responsibility (subtracting two levels),[3] the district court concluded that the total offense level was 50. Treating this as level 43, the district court concluded that Carney Turner's guideline range, at Criminal History Category IV, was life.

The district court did note that it had "looked at all of the [§] 3553(a) factors," but then immediately singled one out for extra weight: "first and *foremost*, the nature and circumstances of the offense." TR4 at 107. "Children," the district court continued, "even if they're worldly children, are precious. That's the reason for these laws. That's the reason this is so egregious." *Id.* The court noted that it had "looked at [Turner's] history and characteristics[,]" though it did not say which ones. *See id.* The court noted that it "had looked at…avoiding

---

[3] The government withheld the third offense-level reduction for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(b), because it deemed Mr. Turner's May 17, 2022 notification of intent to plead too close to his May 31, 2022 trial date (which was later moved to July 18, 2022 on co-defendant's motion.)

unwarranted sentencing disparities, and certainly have taken that into consideration."

The district court sentenced him to life imprisonment, the statutory maximum, on all six counts (to run concurrently) and a lifetime of supervised release. TR4 at 108-109.

The judgment issued on November 14, 2022. R. Doc. 256; Add. at 1. This timely appeal followed. R.Doc. 262.

## Summary of the Argument

Three errors affected the outcome and sentence in this case.

First, four of the six counts to which Carney Turner pled failed to state an offense. These counts are defective because they melded two separate offenses together and then applied an exemption to proving *mens rea* that is only available to one of the offenses. These counts should be vacated.

Second, the district court incorrectly imposed eleven-levels worth of sentencing-guideline enhancements. As a result, the court concluded that Carney Turner's guideline "range" was life.

Finally, the district court's sentence was the product of procedural error (*i.e.,* a failure to consider relevant 18 U.S.C. § 3553(a) factors) and was substantively unreasonable.

**Argument**

**I.   Appellant Carney Turner pled guilty to four counts that failed to state offenses.**

###   A.   Standard of Review

The defense did not object to failure of Counts I-IV to state an offense. In *United States v. Villareal*, 707 F.3d 942, 957 (8th Cir. 2013), however, this Court reviewed a failure-to-state-an-offense claim for the first time on appeal. The Court distinguished failure-to-state-an-offense claims from challenges to the indictment's sufficiency specifically, noting that "the claim that the indictment fails to state an offense may be raised at any time." *Id.* (citing *United States v. Rosnow,* 9 F.3d 728, 729 (8th Cir. 1993)). To be sure, "a more deferential standard of review" is employed, "because '[w]hen an indictment is challenged after jeopardy attaches, it is upheld 'unless it is so defective that by no reasonable construction can it be said to charge the offense.'" *Id.* (quoting *United States v. Pennington,* 168 F.3d 1060, 1064-65 (8th Cir. 1999)).

###   B.   Discussion

Counts I, II, III, and IV fail to state an offense. This Court should vacate Carney Turner's convictions on these counts.

8

These counts accuse Carney Turner of violating (or conspiring to violate) "18 U.S.C. § 1591(a)." Put simply, § 1591(a) defines multiple offenses. The superseding indictment's commingling and conflating the varied components of these multiple offenses renders Counts I-IV fatally defective.

Section 1591(a) reads, in pertinent part:

## § 1591. SEX TRAFFICKING OF CHILDREN OR BY FORCE, FRAUD, OR COERCION

(a) Whoever knowingly –

(1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1)

knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact… that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished a provided in subsection (b).

Subsection (c) of § 1591 further distinguishes § 1591(a)(1) offenses from § 1591(a)(2) offenses:

(c) In a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the

person recruited, enticed, harbored, transported, provided, obtained, maintained, patronized, or solicited, the Government need not prove that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years.

Some courts have held that §1591(a) creates multiple offenses. In *United States v. Lewis,* 2021 WL 2809819 (D. D.C. July 6, 2021), the district court, *citing Blockburger v. United States* 284 U.S. 229, 304 (1932) and *Mathis v. United States*, 136 S.Ct. 2243, 2249 (2016), examined the statute and concluded that "§1591(a) unravels into at least two distinct offenses. The first offense, codified at § 1591(a)(1), is the crime of sex trafficking….The second, codified at § 1591(a)(2), is the crime of benefitting from participating in a venture that engaged in sex trafficking." 2021 WL 2809819 at *6. The *Lewis* Court concluded that, given the alternate *mens rea* requirements, the statute created four separate offenses. *Id.* at *8.

Other courts have held that §1591(a) is a single offense. Addressing a §1591(a) duplicity challenge, this Court concluded that:

many of what Paul labels separate crimes are in fact alternative ways of committing a single offense – the defendant violates the statute if he knowingly 'recruits, entices [etc.],' or 'benefits…from participation,' knowing that 'force, threats of force, fraud, coercion…or any combination

of such means' will be used. The jury did not need to unanimously agree on which of those means Paul used, so long as each juror found he used at least one.

*United States v. Paul*, 885 F.3d 1099, 1104-1105 (8th Cir. 2018).

But neither *Lewis* nor *Paul* address the impact of attaching the § 1591(c) "reasonable opportunity to observe" standard to a count that includes § 1591(a)(2) acts.

In *United States v. Zam Lian Mung*, 989 F.3d 639 (8th Cir. 2021), this Court considered a §1591(a)(1) prosecution where the appellant had been convicted of soliciting a minor to engage in a commercial sex act. 989 F.3d at 641, 642. Mung argued that the district court erred by instructing the jury that he could be convicted if he acted in mere reckless disregard of the person's age. *Id*. This Court disagreed and interpreted §1591(c)'s "reasonable opportunity to observe" language to "generally permit[] convictions [under §1591(a)] when a defendant knows *or* recklessly disregards the age of the minor." 989 F.3d at 643. Though the *Zam Lian Mung* Court's conclusion says "§1591(a)," it clearly meant "§1591(a)(1)," the offense Mung was convicted of. Nothing in *Mung* states that § 1591(c)'s "reasonably opportunity to observe" exemption should apply to prosecutions under subsection (a)(2).

In addition to creating a number of offenses, §1591(a) *excludes* certain act/intent combinations from its reach. The statute is quite convoluted, because the "reasonable opportunity to observe" language in §1591(c) isn't, in and of itself, a greater or lesser *mens rea*, but rather a relief of the obligation to establish knowledge.

Count I of the superseding indictment alleged that Carney Turner and co-defendants conspired to:

> knowingly recruit, entice, harbor, transport, provide, obtain and maintain three minor females…and did benefit financially and by receiving anything of value from participation in a venture engaged in such acts, and having had a reasonable opportunity to observe [the minor females], and knowing and in reckless disregard that [the minor females] were each under the age of 18 years old and knowing and in reckless disregard that [the minor females] would be caused to engage in a commercial sex act in violation of Title 18, United States Code § 1591(a).

R.Doc. 41 at 1-2. And Counts II, III, and IV alleged that Turner:

> did knowingly recruit, entice, harbor, transport, provide, obtain and maintain [a minor female], and did benefit financially and by receiving anything of value from participation in a venture engaged in such acts, and having had a reasonable opportunity to observe [the minor female] and knowing and in reckless disregard that [the minor female] was under the age of 18 years old and knowing and in reckless disregard that [the minor female] would be caused to engage in a commercial sex act.

R. Doc. 41 at 3-4.

In each of these counts, the superseding indictment combined the prohibited acts from§ 1591(a)(1) offenses from § 1591(a)(2) offenses. The superseding indictment then applied the § 1591(c) "reasonable opportunity to observe" standard to the whole count, when that standard only applies to the § 1591(a)(1) act(s)).

As such, Counts I-IV of the superseding indictment alleged conduct not proscribed by §1591(a).

For example, under § 1591(a)(2), one should not be convicted of benefitting from a venture if they did not actually know or recklessly disregard both the age of the person and that the person would be caused to engage in a commercial sex act. That is, a defendant facing a § 1591(a)(2) allegation should not be convicted based only upon his "reasonable opportunity to observe" the victim. Counts I-IV of the superseding indictment alleged, among other things, that Carney Turner benefitted from a (non-advertising) venture and that he had had a reasonable opportunity to observe the victims. This is not an offense. By mushing together the act and intent elements of two separate offenses, Counts I-IV of the superseding indictment alleged conduct not proscribed by either §1591(a)(1) or §1591(a)(2).

**Remedy**

Here, the amalgamation of all of the § 1591(a) acts and § 1591(c) exemption rendered Counts I-IV so defective that by no reasonable construction can they be said to charge offenses. This amalgamation of act elements and *mens rea* elements means that Counts I-IV allege, in effect, that the defendants violated § 1591(a)(2) without the government having to prove more than a reasonable opportunity to observe the victims.

In *United States v. Pleasant*, 125 F.Supp.2d 173 (E.D. Va. 2000) (Payne, J.), the district court dismissed an analogous indictment. In *Pleasant*, the indictment explicitly alleged all four elements of the two distinct § 924(c) offenses in "one jumbled mess." *Id.* at 174-75, 183. Because the *Pleasant* indictment amalgamated the elements – "during, in relation to, and in furtherance of [a predicate crime], did knowingly and unlawfully carry and possess a firearm…"– the district court found that the count was both duplicitous *and* "charge[d] an offense not identified in the statute." *Id.* at 183.

Like the grand jury in *Pleasant,* the grand jury in Carney Turner's case conflated or jumbled the act elements ("recruit, entice, harbor…"

and "benefit financially and by receiving anything of value") and the *mens rea* elements ("knowingly," "knowing," and "in reckless disregard," plus the "reasonable opportunity to observe" language) in the same way the *Pleasant* indictment did. The *Pleasant* Court concluded that alleging all elements § 924(c) offenses in a single count was legally insufficient and that dismissal was the proper remedy:

> To grant the request to strike the so-called surplusage would require the court to identify the offense which the grand jury intended to charge and delete the rest of the text of the indictment. Thus, the court would in essence rewrite the indictment. The Sixth Amendment restricts the United States from altering the indictments of its own volition. The courts are not free to do so either.

*Id.* at 184 (internal citations omitted).

Because Carney Turner pled to the four defective counts, this Court should vacate his convictions on Counts I, II, III, and IV of the superseding indictment.

## II.  The district court incorrectly calculated Appellant Carney Turner's sentencing guideline range.

### A.  Standard of Review

This Court reviews the district court's application and interpretation of the Sentencing Guidelines *de novo* and its factual

findings for clear error. *United States v. Mata-Peres,* 478 F.3d 875, 878 (8th Cir. 2007).

**B.    Discussion**

   **1. Commission of a sex act or sexual contact.**

Section 2G1.3(b)(4) provides for a two-level enhancement if: "A) the offense involved the commission of a sex act or sexual contact; or B) subsection (a)(3) or (a)(4) applies and the offense involved a commercial sex act[.]" Because Turner's base offense level is 30, *i.e.,* because §§ (a)(3) and (a)(4) do not apply, the enhancement turned upon § 2G1.3(b)(4)(A), whether "the offense involved the commission of a sex act or sexual contact."

Turner's offense did not, for the purposes of § 2G1.3(b)(4)(A), "involve[] the commission of a sex act or sexual conduct."

At sentencing, the district court concluded that the "plain meaning" of the enhancement rendered it "properly applied." *See* TR4 at 37-38.

A reading of the whole provision, one that gives meaning to every word and subsection, suggests that the Commission intended § 2G1.3(b)(4)(A) to enhance offenses – *e.g.,* 18 U.S.C. § 2423(b), travel

with intent to engage in illicit sexual conduct – where the offense of conviction involved *the defendant* engaging in a sex act or sexual conduct. This is the only reading of § 2G1.3(b)(4) that does not render § 2G1.3(b)(4)(B) wholly redundant.

In *United States v. Carter,* 960 F.3d 1007, 1011 (8th Cir. 2020), this Court concluded that § 2G1.3(b)(4)(B)'s omission of "the commission of" language saves it from redundancy. Nonetheless, Turner maintains that the structure of § 2G1.3(b)(4) suggests that § 2G1.3(b)(4)(A) is for offenses where the offense involved the defendant committing a sex act or sexual conduct with the victim and § 2G1.3(b)(4)(B) is intended to enhance/elevate "mere" coercion/enticement/transportation cases that culminated in an actual commercial sex act, *i.e.,* to make sure they are treated comparably to the base-offense-level-30 § 1591(b)(2) cases.

### 2. Aggravated role.

Section 3B1.1 creates three- and four-level enhancements for managers/supervisors and organizers/leaders of "criminal activity [that] involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a) & (b). The guideline also includes a more modest, two-level

provision for an organizer/leader/manager/supervisor in any criminal activity.

The key is "participants." Application Note 1 of § 3B1.1 defines a "participant" as a "person who was criminally responsible for the commission of the offense." The superseding indictment alleged that Carney Turner, Sidney Marker, and Julisha Biggs recruited minors to engage in prostitution. To get to *five* participants, the revised presentence investigation report included the two-codefendants *and* the three victims. RPSR at page 46. The government, however, argued that the victims, co-defendants, *and* sex buyers could count as participants. R.Doc. 211 at 18-19; *see also* TR4 at 44. The district court did not seem to accept the victims-as-participants argument and instead used Turner, the two co-defendants, and a pair of sex buyers as participants. TR4 at 68-69.

Carney Turner did not organize, lead, manage, or supervise these two sex buyers, or any sex buyers, any more than a drug dealer leads or organizes the people who buy drugs. The case agent, Special Agent Christina Worster, testified that her investigation had not uncovered any evidence to suggest that either named sex buyer had worked for

Carney Turner. TR4 at 56-57. Section 3B1.1 is not applied that way in drug cases and it should not have been applied that way here.

### 3. Pattern of prohibited sexual conduct.

Of the 59,255 federal cases in which the Sentencing Commission received complete guideline application information in FY20, only 380 – 0.6% – received an enhancement under § 4B1.5. United States Sentencing Commission, *2020 Annual Report and 2020 Sourcebook of Federal Sentencing Statistics*, Table 23 (p. 77).

The language of § 4B1.5(b) is, to be sure, expansive, encompassing any defendant who convicted of a "covered sex crime" (including 18 U.S.C. §§ 1591 and 2422(b)) and who had engaged in "prohibited sexual conduct" on at least two occasions. "Prohibited sexual conduct," under this guideline, is defined, in part, by reference to a statute, 18 U.S.C. § 2426(b)(1)(A) or (B), which lists any offense under Chapters 109A or 110 U.S.C. or § 1591. *See* U.S.S.G. § 4B1.5, n. 4(A)(i). The Commission *also* included in its definition of "prohibited sexual conduct" "the production of child pornography." *Id.* at n. 4(A)(ii). This, of course, is odd because the production of child pornography is a Chapter 110 offense. It makes little sense to incorporate by reference every offense under Chapter 110

and then single out perhaps the worst one to list it again. The definition then goes on to expressly *exclude* two Chapter 110 offenses: the receipt and possession of child pornography. *Id* at n. 4(A)(iii).

Compounding the ambiguity is § 2G1.3 itself. Sections 2G1.3 and 3D1.4 together already establish a system for accounting for multiple victims in these cases. Application Note 6 of § 2G1.3 specifically explains the protocol for multiple-victim cases (which, under the district court's expansive reading of the "prohibited sexual conduct" definition, would invariably trigger § 4B1.5(b)). Making no mention of § 4B1.5(b), this application note simply refers the user to the multiple-count enhancement.

Sections 2G1.3's silence on this enhancement, coupled with the oddly and simultaneously redundant/contradictory language of § 4B1.5(b), suggests that the Commission intended a narrower definition of "prohibited sexual conduct with a minor" than the district court applied.

### 4. The correct computation.

The correct computation is:

| Group (MF) 1 | Group (MF) 2 | Group 3 |
|---|---|---|

| (Cts. I and II) | (Cts. I, III, and **V**) | (Cts I, IV, and **VI**) |
| --- | --- | --- |
| *See issue 1* | BOL 30 (§ 2G1.3(a)(2)) | BOL 30 (§ 2G1.3(a)(2)) |
| | + 2 (§ 2G1.3(b)(2)) | + 2 (§ 2G1.3(b)(2)) |
| | + 2 (§ 2G1.3(b)(3)) | + 2 (§ 2G1.3(b)(3)) |
| | + 2 (§ 3A1.1(b)(1)) | + 2 (§ 3A1.1(b)(1)) |
| | + 2 (§ 3C1.1) | + 2 (§ 3C1.1) |
| + 2 (§ 3D1.4(a)) | | |
| - 2 (§ 3E1.1(a)) | | |
| BOL 38 | | |
| CHC IV | | |
| 324-405 months | | |

## III. The district court imposed a procedurally erroneous and substantively unreasonable sentence.

### A.    Standard of Review

This Court "review[s] a district court's sentence in two steps, first reviewing for significant procedural error, and second, if there is no procedural error," the Court reviews for substantive reasonableness. *United States v. John*, 27 F.4th 644, 650-51 (8th Cir. 2022) (citing

*United States v. Ayres,* 929 F.3d 581, 582-83 (8th Cir. 2019)). "The substantive reasonableness of a sentence is reviewed under an abuse of discretion standard." *Id.* at 651 (citing *United States v. Feemster,* 572 F.3d 455, 461 (8th Cir. 2009)). Admittedly, this Court's "'review of the substantive reasonableness of a sentence is narrow and deferential, and it is the unusual case when we reverse a district court sentence – whether within, above, or below the applicable Sentencing Guidelines range – as substantively unreasonable.'" *Id.* (*quoting United States v. Whitlow,* 815 F.3d 430, 436 (8th Cir. 2016)); *see also United States v. St. Claire,* 831 F.3d 1039, 1043 (8th Cir. 2016).

**B.    Discussion**

This is the unusual case.

A discretionary life sentence after a plea to a non-murder offense is a statistical anomaly, a deviation from the norm so substantial that this Court should review and vacate the sentence.

At sentencing, the district court did note that it had "looked at all of the [§] 3553(a) factors," but then immediately singled one out for extra weight: "first and *foremost*, the nature and circumstances of the offense." TR4 at 107. "Children," the district court continued, "even if

they're worldly children, are precious. That's the reason for these laws. That's the reason this is so egregious." *Id.* The court noted that it had "looked at [Turner's] history and characteristics[,]" though it did not say which ones. *See id.* The court noted that it "had looked at…avoiding unwarranted sentencing disparities, and certainly have taken that into consideration[,]" though it made no effort to reconcile the fact that discretionary life sentences on guilty pleas occurred so infrequently. *See id.*

Life sentences are rare. Discretionary life sentences are rarer. Discretionary life sentences after guilty pleas are so rare as to warrant unique scrutiny by this Court.

First, defendants sentenced for murder fared generally substantially better than Carney Turner. The Sentencing Commission reported that the mean/median sentences for *murder* in fiscal year (FY) 2020 was 255/228 months. U.S. Sentencing Commission, *2020 Annual Report and 2020 Sourcebook of Federal Sentencing Statistics*, Table 28 (p. 82). The same report noted that the mean/median sentences for murder for Category IV defendants in FY20 was 261/260 months. *Id.*

Second, other defendants sentenced under § 2G1.3 fared substantially better than Carney Turner. The Sentencing Commission tracks sentences by guideline and maintains that data online. *See, generally,* U.S. Sentencing Commission, Interactive Data Analyzer, https://ida.ussc.gov/analytics/saw.dll?Dashboard (last accessed February 26, 2023). This data reveals that between FY16 and FY21, 2250 defendants were sentenced using § 2G1.3 as the primary sentencing guideline. *Id.* For the 462 § 2G1.3 offenders who landed in Criminal History Categories IV, V, or VI (*i.e.,* having removed the Category I, II, and III offenders from the data), the mean/medium sentences was 204/180 months. *Id.*

A recent study commissioned by the United States Sentencing Commission, demonstrated just how *rare* discretionary life sentences after guilty pleas are. *Life Sentences in the Federal System* revealed that the 709 life sentences imposed between fiscal years 2016 and 2021 accounted for just 0.2 % of all federal defendants during that period. U.S. Sentencing Commission, *Life Sentences in the Federal System*, July 2022, at 1. Of the life sentences, almost half (48.7%) of

them were for murder. *Id.* at 2. And of the 709 life sentences imposed between Fiscal Years 2016 and 2021, 86 of those were mandatory life sentences for drug trafficking. *Id.* at 7-8 and Figures 2 & 3. The Commission surmised that the 2018 passage of the First Step Act – which reduced the frequency of mandatory life sentences in drug cases – was responsible for the profound drop of total life sentences in FY21: 60, *i.e.,* just 0.1% of all federal cases. *Id.* at 6-7 & Figure 1.

In fact, of the life sentences imposed between FY16-21, 43.8% of them were convicted under a statute carrying a mandatory minimum penalty of life imprisonment. *Id.* at 14. That is, in almost half of all life-sentence cases, life was the only sentence available.

Moreover, the trial rate for life sentences from FY16 to FY21 was 75.6% (536 of 709). *Id.* at 15.

Put another way, of the 402,404 federal cases between FY16 and FY21, only 173 people – 0.043% – pled guilty and got a life sentence. An undetermined number of these guilty-plea life sentences could be defendants who entered into a plea agreement to avoid a capital prosecution.

What do these statistics mean? In the overwhelming majority of case where a life sentence is possible, the district court gives some consideration for a guilty plea.

In *United States v. Scott*, 732 F.3d 910 (8th Cir. 2013), this Court reviewed (and found substantively unreasonable) a life sentence for a defendant convicted of bank robbery, use of a firearm, and felon in possession of a firearm. In dissent, Judge Bright called such a sentence "'gilding the lily.' It is unreasonable and excessive." 732 F.3d at 919. "I ask what more is required[,]" wrote Judge Bright. "The sentence in this case is unreasonable and simply represents an effort to send a message of being tough on crime. But that's not the purpose of a sentence." *Id.* at 919 (Bright, J. dissenting). Judge Bright called the sentence "clearly excessive" and commented that it "illustrates very graphically the broken criminal justice system in the federal courts." *Id.* Judge Bright is correct. The same wrongheadedness infected Carney Turner's sentencing.

Carney Turner pled guilty without a plea agreement. No victims had to testify at trial. He was in Criminal History Category IV, to be sure, but he was not in V or VI. At sentencing, citing 18 U.S.C. §

3553(a)(6), the need to avoid unwarranted sentencing disparities, Turner argued that, statistically speaking, a life sentence would be unusually rare. He also noted several federal life sentence-holders and asked to impose a proportionate sentence.[4]

Before announcing its sentence, the district court did note that it had "looked at all of the [§] 3553(a) factors," but then immediately singled one out for extra weight: "first and *foremost*, the nature and circumstances of the offense." TR4 at 107. "Children," the district court continued, "even if they're worldly children, are precious. That's the reason for these laws. That's the reason this is so egregious." *Id.* The

---

[4] Including: **Terry Nichols**, Timothy McVeigh's coconspirator in the 1995 bombing of the Alfred P. Murrah Federal Building in Oklahoma City that killed 168 people, including 19 children in a daycare; **Eric Rudolph**, who pled to carrying out four bombings that killed three people between 1996 and 1998, including the Centennial Olympic Park bombing in Atlanta; **Joaquin Guzman**, a.k.a. "El Chapo," the former leader of the Sinaloa drug cartel who was convicted after a three-month jury trial of drug- trafficking, money laundering, and murder; **Michael Swango**, a (former) physician, who pleaded guilty to fatally poisoning four patients; **Robert Hanssen**, a former FBI agent, convicted of espionage in 2002 for passing classified information to the Soviet Union and later Russia that led to the execution of U.S. agents; and **James Marcello**, a "Front Boss" of the "Chicago Outfit," convicted of a racketeering conspiracy for participating in 18 murders and directing criminal activities, including extortion, gambling, loan sharking, and bribery.

court noted that it had "looked at [Turner's] history and characteristics[,]" though it did not say what history or which characteristics. *See id.* The court noted that it "had looked at…avoiding unwarranted sentencing disparities, and certainly have taken that into consideration[,]" though it did not explain how Turner's case was comparable to other life-sentence recipients or why, in a scheme where discretionary life sentences on guilty pleas were remarkably rare, Turner's case demanded one. *See id.* And though the district court singled out the offense's "egregious[ness]," it made no effort to explain why Carney Turner should fare so much worse than other the average § 2G1.3 or murder case.

Put simply, though the district court said it had considered all of the § 3553(a) factors, it only made the briefest of mentions of Turner's own childhood trauma, his evidence of post-offense rehabilitation, and, most critically, the need to avoid unwarranted sentencing disparities. Though the district court said it had considered all of the factors, it hadn't.

Carney Turner now asks this Court to vacate this procedurally and substantively unreasonable sentence.

## Conclusion

Counts I, II, III, and IV are a jumbled amalgamation of acts and intent elements. By pairing a lower intent/knowledge element with statutory provisions that require a higher level of knowledge, these counts fail to state an offense.

The district court applied so many Guidelines enhancements that even a Category I defendant who pled guilty would be facing a life guideline "range." Eleven-levels worth of these enhancements should not have been applied, including a two-level enhancement for the commission of a sex act, a four-level enhancement for leading and organizing sex buyer with whom Mr. Turner had no authority over, and a rarely-applied five-level enhancement that swallows § 2G1.3 and the multiple-count adjustment whole.

Finally, with scant explanation, the district court elevated the offense of conviction above all other §3553(a) factors and then failed to explain why a defendant who pled guilty should receive a statistically anomalous and more severe sentence than others who had committed similar or worse offenses. This failure to reconcile the nature-of-the-offense emphasis and the need to avoid unwarranted sentencing

disparities makes the district court's decision to sentence Carney

Turner to die in prison procedurally and substantively unreasonable.

This Court should vacate Turner's convictions on Count I-IV and

his sentence on all counts.

Carney Turner, Appellant,

By: /s/ Richard H. McWilliams
**Richard H. McWilliams**
**Assistant Federal Public Defender**
**District of Nebraska**
222 South 15th Street, Ste. 300N
Omaha, NE. 68102
(402) 221-7896
rich_mcwilliams@fd.org

**In the United States Court of Appeals
For the Eighth Circuit**

United States of America,
Appellee,

vs.

Carney Turner,
Appellant.

**Certificate of Service**

Richard H. McWilliams, after being first duly sworn states:

1.     He is the attorney for Appellant herein.

2.     I hereby certify that on February 28, 2023, I electronically submitted for approval the foregoing with the Clerk of the Court for the United States of Appeals for the Eighth Circuit by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished pursuant to Rule

28A(d) of the Local Rules of the United States Court of Appeals for the

Eighth Circuit.

Carney Turner, Appellant,

By: /s/ Richard H. McWilliams
   **Richard H. McWilliams**
   **Assistant Federal Public Defender**
   **District of Nebraska**
   222 South 15th Street, Ste. 300N
   Omaha, NE.  68102
   (402) 221-7896

**In the United States Court of Appeals
For the Eighth Circuit**

United States of America,
Appellee,

vs.

Carney Turner,
Appellant.

_____

**Certificate of Compliance**

_____

Richard H. McWilliams, after being first duly sworn states:

1.     The electronic version of this brief and the electronic version of the addendum have been scanned for viruses and are virus free.

2.     Appellant's Brief in this matter is <u>6,211</u> words in length, excluding the Certificate of Service and Certificate of Compliance, which complies with the type-volume limitation found at Fed. R. App. P. 32(a)(7)(B).

3.     Appellant's Brief in this matter was prepared using Word 2016, with a 14-pt, proportionally-spaced Century Schoolbook font face, in compliance with Fed. R. App. P. 32(a)(5).

Carney Turner, Appellant,

By: /s/ Richard H. McWilliams
   **Richard H. McWilliams**
   **Assistant Federal Public Defender**
   **District of Nebraska**
   222 South 15th Street, Ste. 300N
   Omaha, NE.  68102
   (402) 221-7896